UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LARRY O'NEAL WALKER, II, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHIEF CANTRELL, KEITH GREGORY, SGT. )<br>ANDY HOWDESHELL, INV. ANGUS, SARA )<br>SUMMERALL, CLARK SMITH, and )<br>JOHN DOE, )<br>)<br>Defendants. ) | No. 3:24-CV-00087-JRG-JEM |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a self-represented prisoner housed in the Blount County Jail, filed a civil rights complaint under 42 U.S.C. § 1983 [Doc. 1] and motion to proceed without prepayment of the filing fee [Doc. 2]. For the reasons set forth below, the Court grants Plaintiff's motion, permits Plaintiff's retaliation claim to proceed against Defendant Investigator Angus and Defendant Captain Keith Gregory, and dismisses the remaining claims and Defendants.

I. **MOTION TO PROCEED WITHOUT PREPAYMENT OF FEES**

It appears from Plaintiff's motion [Doc. 2] and supporting documents [Doc. 6] that he lacks the financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [Doc. 2] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902 as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account

for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk will also be **DIRECTED** to furnish a copy of this Memorandum and Order to the Court's financial deputy. This Memorandum and Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. SCREENING OF COMPLAINT

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. However, courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim under 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "[s]ection 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### B. Plaintiff's Allegations

In June 2023, Plaintiff made a Prison Rape Elimination Act ("PREA") complaint against Blount County Jail Captain Keith Gregory, who made "sexual advances" toward Plaintiff [Doc. 1 at 3-4]. Afterwards, Investigator Angus threatened to "bring false police report felony charges" on Plaintiff if he moved forward with the complaint [*Id.* at 4]. Plaintiff "tried talking to Chief Cantrell[,] but he told [Plaintiff] to get out of his face" and advised Plaintiff "good luck" in getting the issue settled [*Id.*]. Captain Gregory, Sergeant Howdeshell, and Investigator Angus "are having the staff retaliate" against Plaintiff for making the PREA complaint by "putting things inside [his] food trays[,]" calling him racist names, and threatening that he "won't be leaving Blount County Jail alive" [*Id.*].

3

Sergeant Howdeshell and the mailroom workers are opening and reading Plaintiff's outgoing and incoming legal mail, and Plaintiff believes that they are sharing the contents with the Assistant United States Attorney ("AUSA") assigned to Plaintiff's federal criminal case [*Id.*]. Moreover, medical personnel Sara Summerall and Clark Smith have excessively charged Plaintiff's inmate account for medical fees [*Id.*].

Aggrieved by these circumstances, Plaintiff seeks monetary damages "and whatever else this Court see[s] is fit" [*Id.* at 5].

### C. Analysis

Because Plaintiff indicates he is facing federal charges, the Court presumes he is a pretrial detainee. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (providing that a pretrial detainee's status converts to that of a convicted prisoner upon "an adjudication of guilt in accordance with due process of law"). While a convicted prisoner derives his constitutional protections from the Eighth Amendment to the United States Constitution, a pretrial detainee derives his constitutional protections from the Fourteenth Amendment. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). This provision protects detainees from being "punished prior to an adjudication of guilt." *Bell*, 441 U.S. at 535. Despite the distinct constitutional provisions protecting the differing custodial designations, the protection offered by the Due Process Clause is "similar if not greater" than those afforded by the Eighth Amendment. *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998)); *see also Griffith v. Franklin Cnty., Ky.,* 975 F.3d 554, 566 (6th Cir. 2020).

#### 1. Mail

It is well settled that a prisoner has a First Amendment right to receive and send mail, subject to reasonable limitations for "legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873-74 (6th Cir. 2003). But "[n]ot all mail that a prisoner receives from a legal source

4

will implicate constitutionally protected legal mail rights." *Id.* at 874. Recognizing the need to balance the prison's needs for security and safety against the prisoner's countervailing legal rights, prison officials can open "legal mail" and inspect it for contraband in the prisoner's presence, *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974), "if such a request" to be present "has been made by the prisoner[,]" *Sallier*, 343 F.3d at 874. Generally, to be considered constitutionally protected legal mail, such mail must be "properly and clearly marked" as such. *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996).

Here, Plaintiff's allegations regarding his mail fail to state a claim upon which relief may be granted. Plaintiff does not allege that he requested his legal mail be opened in his presence or that it was clearly and properly marked as legal mail. And Plaintiff offers no factual support for his belief that Blount County mailroom personnel are sharing his legal mail with the AUSA assigned to his criminal case, and therefore, this conclusory allegation fails to give rise to a viable claim. *See Smith v. Gen. Motors, LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (holding complaints made "on information and belief" cannot rest on conclusory allegations, but rather, "must set forth a factual basis for such belief"). Accordingly, Plaintiff's claim relating to his legal mail will be **DISMISSED**.

        **2.**     **Medical Fees**

Plaintiff asserts that Defendants Sara Summerall and Clark Smith have overcharged him for medical services [Doc. 2 at 4]. But a plaintiff who claims that he was deprived of property by a "random and unauthorized" act of a governmental employee must typically show that the state's remedies for that deprivation are inadequate. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt*'s holding to intentional deprivations of property); *see also Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995). Plaintiff has not pled that

Tennessee's post-deprivations are inadequate as is necessary to sustain this claim. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983). Moreover, the Sixth Circuit has held that Tennessee provides adequate post-deprivation remedies for the loss of personal property. *Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985) (concluding that "the State of Tennessee has provided adequate procedures to assure the return of items either negligently or intentionally converted"). Accordingly, Plaintiff's claim that he has been overcharged for medical services will be **DISMISSED**.

### 3. Harassment and Racial Slurs

While Plaintiff does not appear to raise an independent claim that he was subjected to sexual harassment, threats, or harassment, the Court, out of an abundance of caution, considers whether these allegations state a cognizable § 1983 claim.

Plaintiff's claim that Captain Keith Gregory made "sexual advances" toward him fails to state a claim for relief. Plaintiff does not allege Captain Gregory had physical contact with him, and verbal harassment, even that which is overtly sexually suggestive, fails to state a cognizable constitutional issue. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Faulkner v. Davidson Cnty. Sheriff's Off.*, No. 3:14-MC-00740, 2014 WL 3723205, at *2 (M.D. Tenn. July 24, 2014) ("Allegations of threats and verbal abuse do not state cognizable claims under § 1983." (citing *Williams v. Gobies*, 211 F.3d 1271, 2000 WL 571936, at *1 (6th Cir. May 1, 2000))); *Bourne v. Awomolo*, No. 1:16-CV-957, 2016 WL 4771240, at *3-4 (W.D. Mich. Sept. 14, 2016) (holding "circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain"); *Calvert v. Weatherford*, No. 3:13-CV-00274, 2013 WL 1937690, at *1-2 (M.D. Tenn. May 9, 2013) (allegations that guard stared in a "sexually suggestive manner[,]" made "sexual grunting sounds[,]" and "looked at the plaintiff's crotch and bit his lip 'sexually'"

while sweating "profusely" and "breathing hard" did not rise to the level of a constitutional violation).

Plaintiff also claims that Captain Gregory, Sergeant Howdeshell, and Investigator Angus have had staff threaten him and use racial slurs toward him [Doc. 1 at 4]. But such conduct does not raise a constitutional issue, as Plaintiff does not have a constitutional right to avoid being threatened or disrespected. *See Ivey*, 832 F.2d at 955; *Jones Bey v. Johnson*, 248 F. App'x 675, 677 (6th Cir. 2007) (finding that the occasional use of racial slurs, "although unprofessional and reprehensible, does not rise to the level of constitutional magnitude") (quoting *Corsetti v. Tessmer*, 41 F. App'x 753, 755-56 (6th Cir. 2002)). Therefore, all of Plaintiff's claims relating to Defendants' allegedly harassing conduct will be **DISMISSED**.

4. **Chief Cantrell**

To state a claim against Defendant Chief Cantrell, Plaintiff must adequately plead that through his own actions, Defendant Cantrell violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). This requirement exists because constitutional liability cannot attach to a Defendant solely based on his or her position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell*, 436 U.S. at 691 (finding that liability under § 1983 may not be imposed merely because a defendant "employs a tortfeasor").

Plaintiff claims that when he "tried talking to Chief Cantrell[,] he told [Plaintiff] to get out of his face" and wished him "good luck" in response to Plaintiff's inquiry into how to "get this issue handled" [Doc. 1 at 4]. But Plaintiff cannot hold Defendant Cantrell constitutionally liable

7

for a "failure to act[.]" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that a failure to respond to or remedy a prisoner's grievance was insufficient to impose liability on supervisory personnel under § 1983). And Plaintiff does not allege that Chief Cantrell was personally involved in any of the constitutional deprivations alleged. Accordingly, all claims against Defendant Cantrell will be **DISMISSED**.

        5.        **Retaliation**

Plaintiff claims that Investigator Angus threatened to charge Plaintiff with false felony charges if he moved forward with his PREA complaint [Doc. 1 at 4]. Plaintiff also maintains that Captain Gregory, Sergeant Howdeshell, and Investigator Angus "are having the staff" put things in Plaintiff's food, threaten him, and harass him, in retaliation for the PREA complaint [*Id*.].

To establish a retaliation claim, Plaintiff must show that (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff has sufficiently pled the first element of a retaliation claim, as he engaged in protected conduct when he filed his PREA complaint. *See Jackson v. Wicking*, No. 3:20-CV-00249, 2020 WL 6874963, at *3 (M.D. Tenn. Nov. 23, 2020) ("The pursuit of a prison grievance–including, presumably, a complaint under PREA–is protected conduct, so long as the grievance is not frivolous."). Plaintiff has also sufficiently pled the second element, as the Court presumes at this stage of the litigation that the threat of criminal charges, and the implied threat of physical violence in conjunction with the use of racial slurs, is sufficiently adverse to deter a person of ordinary firmness from filing a PREA complaint. *See Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse to support

8

a claim of retaliation."); *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503-04 (6th Cir. 2011) (finding guard's use of racial threats to advocate physical violence while conducting shakedown could constitute adverse action). And Plaintiff has sufficiently alleged the third element–causation–as to Investigator Angus, as he alleges that Angus threatened Plaintiff with criminal charges if he moved forward with his PREA complaint. Therefore, Plaintiff's retaliation claim against Investigator Angus will **PROCEED**. Similarly, Plaintiff stated that he made a PREA complaint against Captain Gregory, and that Captain Gregory then had staff members put things in his food, harass him, and threaten him, so Plaintiff's retaliation claim against Captain Gregory will also **PROCEED**.

But Plaintiff has not sufficiently alleged the causation element for Defendant Howdeshell, because Plaintiff has not pled any facts that would allow the Court to infer that Defendant Howdeshell had any motivation to order staff members to retaliate against Plaintiff for making the PREA complaint. Accordingly, Plaintiff's retaliation claim against Defendant Howdeshell will be **DISMISSED**. *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) (holding "conclusory allegations of [a] retaliatory motive unsupported by material facts will not be sufficient" to state a § 1983 claim); *see also Cantley v. Armstrong*, 391 F. App'x 505, 507 (6th Cir. 2010) (affirming district court's holding that a prisoner's complaint was insufficient to demonstrate a causal relationship between protected activity and adverse action because "'bare allegations of malice on the defendants' parts are not enough to establish retaliation claims' that will survive § 1915A screening" (quoting *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001))).

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2] is **GRANTED**;

9

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. Plaintiff has set forth a plausible claim of retaliation against Investigator Angus and Captain Keith Gregory, and this discrete claim will **PROCEED** against those Defendants;

5. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Angus and Gregory;

6. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this Order;

7. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

8. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packets, this action will be dismissed;

9. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against that Defendant;

10. All other claims and Defendants are hereby **DISMISSED**; and

11. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

So ordered.

ENTER:

                                                s/J. RONNIE GREER
                                       UNITED STATES DISTRICT JUDGE